IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THEODORE J. DIVER<br>7560 Yawberg Road<br>Whitehouse, Ohio 43571, | ) <br><br>) | Case No.<br><br>Judge |
| Plaintiff, | ) | **COMPLAINT** |
| -vs- | ) | **JURY DEMAND ENDORSED HEREON** |
| PAUL A. DOBSON<br>Wood County Prosecuting Attorney<br>One Courthouse Square<br>Bowling Green, Ohio 43402, | )<br><br>)<br><br>) | |
| -and- | ) | |
| MARK WASYLYSHYN<br>Wood County Sheriff<br>1960 E. Gypsy Lane Road<br>Bowling Green, Ohio 43402, | )<br><br>)<br><br>) | |
| -and- | ) | |
| WOOD COUNTY, OHIO<br>One Courthouse Square<br>Bowling Green, Ohio 43402, | )<br><br>) | |
| -and- | ) | |
| DETECTIVE SGT. TERRY E. JAMES<br>Wood County Sheriff's Office<br>1960 E. Gypsy Lane Road<br>Bowling Green, Ohio 43402, | )<br><br>) | |

1

|  | ) |
| --- | --- |
| -and- | ) |
|  | ) |
| DETECTIVE SGT. SCOTT KOCH | ) |
| Wood County Sheriff's Office | ) |
| 1960 E. Gypsy Lane Road | ) |
| Bowling Green, Ohio 43402, | ) |
| Defendants. | ) |

## INTRODUCTION

1. This is an action for damages based upon the withholding of exculpatory evidence from Plaintiff in the case of *State of Ohio v. Theodore J. Diver,* Wood County Court of Common Pleas Case No. 2010CR0204.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the fourteenth amendment to the United States Constitution as applied to Wood County, Ohio and its agencies, officials, and employees.

3. Venue is proper in the Northern District of Ohio, Western Division, as all of the acts complained of occurred in Wood County, Ohio except for the execution of a search warrant at Plaintiff's residence in Lucas County, Ohio.

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1391.

5. Plaintiff seeks compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1988.

## PARTIES

6. Plaintiff is and was at all times relevant to this complaint a citizen of the United States and a resident of Lucas County, Ohio.

2

7. At all times relevant hereto Defendant Paul A. Dobson ("Dobson") was and is the duly-elected prosecuting attorney for Wood County, Ohio and is responsible for the prosecution of all felony charges within said county in cases brought on behalf of the State of Ohio. Further, he has supervisory and final policy-making authority concerning the affairs of his office and the assistant prosecuting attorneys, secretaries, law clerks and interns who work on his behalf. He is being sued in his official capacity.

8. At all times relevant hereto Defendant Mark Wasylyshyn ("Sheriff") was and is the duly-elected Sheriff of Wood County, Ohio and is responsible for the enforcement of the laws of the State of Ohio in and for Wood County, Ohio. Further, as Sheriff, he has supervisory and final policy-making authority concerning the affairs of his office and the deputy sheriffs who work on his behalf. He is being sued in his official and individual capacities.

9. Defendant Wood County ("County") is a political subdivision of the State of Ohio with various public entities under its direction, including the Wood County Sheriff's Office and the Wood County Prosecutor's Office which, at all times relevant to this complaint, employed the individually named sheriff's deputies and unnamed assistant prosecutors, secretaries, interns and law clerks involved herein.

10. At all times relevant hereto Defendant Detective Sgt. Terry James ("James") was and is a deputy sheriff working in and for the Wood County Sheriff's Office under the direction and control of the Sheriff, and had shared primary authority of the investigation resulting in Plaintiff's prosecution. He is being sued in his individual capacity.

11. At all times relevant hereto Defendant Detective Sgt. Scott Koch ("Koch") was and is a deputy sheriff working in and for the Wood County Sheriff's Office under the direction and

control of the Sheriff, and had shared primary authority of the investigation resulting in Plaintiff's prosecution. He is being sued in his individual capacity.

## OPERATIVE FACTS

12. A search warrant was conducted on Plaintiff's residence in Whitehouse, Lucas County, Ohio on March 31, 2010 by sheriff's deputies of the Wood County and Lucas County, Ohio Sheriff's offices. Among other items, the deputies removed over 50 firearms from the Plaintiff's residence which were held as evidence by the Wood County Sheriff for Plaintiff's impending prosecution.

13. Plaintiff was indicted by a Wood County Grand Jury on April 22, 2010 for one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1), a felony of the first degree, punishable by up to 10 years' imprisonment and a $20,000.00 fine.

14. Plaintiff was arraigned on said charge on June 7, 2010 at which time he entered into a recognizance with the stipulation that he have no contact with various co-defendants.

15. Wood County Assistant Prosecuting Attorney Heather M. Baker ("Baker") was tasked by Dobson with Plaintiff's prosecution.

16. Baker supplied discovery at various times to Plaintiff's counsel for evaluation in accordance with Baker's duties under Ohio R. Crim. P. 16. Among many other items, Baker disclosed to Plaintiff's counsel a compact disc of an interview with the state's main witness ("informant"), similarly charged as Plaintiff, who decided to turn state's evidence and who implicated Plaintiff and others similarly charged in a burglary and theft ring occurring in Wood County, Ohio. The informant alleged that Plaintiff received, on more than one occasion, firearms and other property that he knew or had reasonable cause to believe was stolen by one or more of his alleged co-defendants as part of, and in furtherance of, an ongoing criminal enterprise. The

4

interview memorialized on the compact disc was conducted during a proffer session occurring on August 26, 2010. As a result of, and as a benefit for, the information provided in the proffer, the informant received that same day a recognizance bond on Baker's recommendation after having been in jail for approximately four and one-half months.

17. Plaintiff's prosecution continued, and entailed the filing and resolution of pretrial motions and provision of reciprocal discovery, up to the eve of Plaintiff's trial.[1] A final pretrial was held in Wood County Common Pleas Court Judge Reeve Kelsey's chambers on May 9, 2011. At the pretrial, Baker presented to Plaintiff's counsel a second compact disc recording of an interview with the informant. Baker indicated that she had "just received" the disc from James and had not yet listened to it, but indicated she had been told that it "was only about ten minutes" in duration.

18. Plaintiff's counsel listened to this "second" recorded statement upon returning to his office from the pretrial. The recording, which was over 40 minutes in length, turned out to be the first recorded statement taken from the informant by James at the time of the informant's arrest on April 9, 2010. The informant's statements at that time were markedly different in substance from his statements given during the proffer on August 26, 2010 and cast serious doubt on Plaintiff's "guilt." As a result of hearing the contents of the recording, Plaintiff's counsel made contact with Judge Kelsey and Baker after normal court hours and obtained a continuance of the trial. It was suggested by Plaintiff's counsel to Baker during this contact that she may wish to consider dismissing the case against Plaintiff once she listened to the recording.

---

[1] The jury trial was ultimately scheduled to begin on May 11, 2011; however, due to the circumstances of certain witnesses, trial depositions were to commence May 10, 2011, with opening statements to follow the next day.

19. Baker filed a motion to dismiss the prosecution against Plaintiff on June 23, 2011. Said motion stated in part that "the newly-discovered (sic) evidence that was provided to the State and defense counsel days (sic) before the last scheduled jury trial substantially calls into question the credibility of the State's key witness in this matter. Such request [to dismiss the prosecution against Plaintiff] is made in the interest of justice."

20. Judge Kelsey entered an order dismissing the case against Plaintiff on July 5, 2011.

21. On July 22, 2011 Plaintiff's counsel made a public records request on the Sheriff asking for a copy of his "office's policies/procedures controlling the collection, maintenance, handling, and disclosure of exculpatory evidence." On August 9, 2011 Plaintiff's counsel received from James a response indicating that "[o]ur office operates under the policy that you were provided.  We do not have specific policies that deal with Exculpatory or Inculpatory Evidence in a different manner or fashion."[2]

22. Plaintiff retrieved his property seized and held by the Wood County Sheriff's Office on August 18, 2011. Many of the firearms were collector's items and were substantially damaged during the time they were in the custody of the Sheriff, thereby diminishing their functionality and value.

23. As a direct and proximate result of Defendants Dobson's, Sheriff's, James' and Koch's actions and/or inactions, Plaintiff has suffered the following damages:

    a. Plaintiff suffered a violation of his clearly established constitutional right to due process under the fourteenth amendment to the United States Constitution resulting from

---

[2] The copy of the policy provided to Plaintiff referenced in this communiqué simply dealt with the return of seized property that was no longer needed as evidence. It said nothing about the handling of exculpatory evidence.

James' and Koch's withholding of exculpatory evidence; from the Sheriff's deliberate indifference to the rights of Plaintiff and other persons similarly situated to be provided with exculpatory evidence, and the Sheriff's failure to promulgate a policy and to train and supervise his deputies in this regard; and by Dobson's failure to train and supervise his non-lawyer subordinates in the ferreting out and provision of exculpatory and/or material evidence, in spite of his knowledge of past cases of a similar nature in his office which demonstrate an historical problem in this regard;

      b. Plaintiff incurred and paid over $25,000.00 in attorney fees defending against the criminal prosecution brought against him which, had the exculpatory evidence been provided to Baker by James or Koch in a timely fashion, never would have been brought;

      c. Plaintiff lost time from work as a result of traveling to and from, and attending, court proceedings, at which his presence was required as a condition of his bond;

      d. Plaintiff, a self-employed contractor, lost work as a result of the loss of personal trust in him by former, then-current, and prospective customers, and suffered and continues to suffer damages to his reputation and resulting loss of income;

      e. Plaintiff, an avid outdoorsman, was unable to hunt for food for himself and his family as he had always done on his extensive wooded property as a result of the confiscation of all of his firearms; accordingly, Plaintiff had to expend money for food for himself and his family that he otherwise would not have had to expend; and

7

  f. Plaintiff's firearms were damaged in an aggregate monetary amount yet to be determined as a result of improper storage and handling by the Sheriff, thereby decreasing their value and functionality.

24. The policies and customs of the Wood County Prosecutor, the Wood County Sheriff, and Wood County, Ohio which demonstrate a deliberate indifference to the clearly established constitutional rights of persons within the County, were the direct and proximate cause of the violations of Plaintiff's rights alleged herein, and Plaintiff has suffered the following damages:

  a. Plaintiff suffered a violation of his clearly established constitutional right to due process under the fourteenth amendment to the United States Constitution resulting from James' and Koch's withholding of exculpatory evidence; from the Sheriff's deliberate indifference to the rights of Plaintiff and others similarly situated to be provided with exculpatory evidence, and the Sheriff's failure to promulgate a policy and to train and supervise his deputies in this regard; and by Dobson's failure to train and supervise his non-lawyer subordinates in the ferreting out and provision of exculpatory evidence, in spite of his knowledge of past cases of a similar nature in his office which demonstrate an historical problem in this regard;

  b. Plaintiff incurred and paid over $25,000.00 in attorney fees defending against the criminal prosecution brought against him which, had the exculpatory evidence been provided to Baker by James or Koch in a timely fashion, never would have been brought;

  c. Plaintiff lost time from work as a result of traveling to and from, and attending, court proceedings, at which his presence was required as a condition of his bond;

8

  d. Plaintiff, a self-employed contractor, lost work as a result of the loss of personal trust in him by former, then-current, and prospective customers, and suffered and continues to suffer damages to his reputation and resulting loss of income;

  e. Plaintiff, an avid outdoorsman, was unable to hunt for food for himself and his family as he had always done on his extensive wooded property as a result of the confiscation of all of his firearms; accordingly, Plaintiff had to expend money for food for himself and his family that he otherwise would not have had to expend; and

  f. Plaintiff's firearms were damaged in an aggregate monetary amount yet to be determined as a result of improper storage and handling by the Sheriff, thereby decreasing their value and functionality.

## COUNT I: 42 U.S.C. § 1983: DOBSON'S FAILURE TO TRAIN AND SUPERVISE

25. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

26. Dobson employs unlicensed secretaries, interns and law clerks to perform various duties in and for his office. One of these duties is to prepare discovery packages to respond to discovery requests made by defense counsel. The secretaries, law clerks and interns oftentimes speak with law enforcement officers conducting investigations and obtain from those officers the information to pass along to defense counsel in the discovery packages. These discovery packages are then made available or provided to defense counsel, often without an independent and meaningful review thereof being made by the assistant prosecutor assigned to any given case until the case nears trial. This practice has resulted in many "11th-hour," and in some cases, eve-

of-trial discovery disputes between Dobson's assistant prosecutors and defense counsel. Accordingly, Dobson knows, or should know, that his office, by and through the actions of his subordinates, has a history of not providing, in a timely fashion, information material to the defense of defendants that his office investigates and prosecutes.

27. In spite of this knowledge, Dobson continues to permit unlicensed secretaries, law clerks and interns to prepare discovery packages to provide to defense counsel in response to their requests for discovery. Moreover, Dobson has failed to adequately train and supervise the secretaries, interns and law clerks in their duties, especially with regard to obtaining, recognizing and identifying potentially exculpatory evidence. In addition, Dobson does not have in place any policy or program of supervision instructing his assistant prosecutors as to how to oversee or assist the secretaries, law clerks and interns in these activities.

28. Dobson knows, or should know, that permitting unlicensed and untrained secretaries, interns and law clerks to perform the crucial task of preparing discovery packets has great and obvious potential to result in the type of harm suffered by the Plaintiff as alleged herein, and that such harm does and did in fact occur.

29. Dobson's practices and policies regarding how discovery packets are prepared and provided to defense counsel, as well as his lack of establishing a proper program of training and supervision of his subordinates in this regard, demonstrate his conscious disregard for, and deliberate indifference to, the rights of persons accused of crimes that his office investigates and prosecutes; specifically, the right to due process arising under the fourteenth amendment to the United States Constitution.

**COUNT II: 42 U.S.C. § 1983: SHERIFF'S FAILURE TO TRAIN AND SUPERVISE**

30. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

31. The Sheriff knows, or should know, both currently and at the time of the Plaintiff's damages as alleged herein, that it would be an obvious circumstance or eventuality that the deputies under his supervision, in the process of investigating possible crimes, would either learn or come into possession of evidence which is exculpatory in nature.

32. In spite of this knowledge, the Sheriff, as the ultimate supervisor and final policy maker of his office, did not have in place at the time of Plaintiff's damages as alleged herein a policy or training program instructing his subordinates in the recognition and proper handling of exculpatory evidence.

33. The Sheriff's failure to control the conduct of his subordinates in this regard through an appropriate regimen of supervision and training designed to prevent the type of harm suffered by Plaintiff herein amounts to a conscious disregard for, and deliberate indifference to, the constitutional rights of the citizens of the County and those persons coming under the investigation of his office; specifically, the right to due process arising under the fourteenth amendment to the United States Constitution.

**COUNT III: 42 U.S.C. § 1983 AGAINST THE COUNTY OF WOOD, DOBSON AND SHERIFF**

34. Paragraphs 1 through 33 are incorporated herein by reference as though fully set forth.

35. At all times relevant hereto, the County, Dobson, and Sheriff developed policies, practices and customs exhibiting deliberate indifference to the constitutional rights of the citizens

11

of the County and those persons coming under the investigation of the County Sheriff's Office and the investigation and prosecution of the County prosecutor's office. Further, these policies and customs are the direct and proximate cause of Plaintiff's damages as alleged herein.

36. It was the policy, practice or custom of the County and Dobson to inadequately train and supervise the secretaries, interns and law clerks preparing and providing discovery packets to defense counsel in cases Dobson's office prosecuted, in spite of Dobson's and the County's knowledge that permitting unlicensed and untrained secretaries, interns and law clerks to perform the crucial task of preparing discovery packets has the great and obvious potential to result in the type of harm suffered by the Plaintiff as alleged herein, and that such harm does and did in fact occur.

37. It was the policy, practice or custom of the County and the Sheriff to inadequately train and supervise deputy sheriffs in the performance of their duties through an appropriate regimen of supervision and training designed to prevent the type of harm suffered by Plaintiff herein, in spite of the Sheriff's and the County's knowledge that failing to promulgate an appropriate policy or regimen of training and supervision of deputies posed an obvious circumstance or eventuality that the deputies investigating possible crimes would either learn or come into possession of evidence which is exculpatory in nature, and then fail to properly identify and pass along that evidence to prosecutors.

38. The above policies, practices or customs demonstrate a deliberate indifference on the part of the policymakers and the County to the constitutional rights of the citizens of the County and those persons coming under the investigation of the County Sheriff's Office and the investigation and prosecution of the County prosecutor's office; specifically, the right to due

process arising under the fourteenth amendment to the United States Constitution. Further, these policies and customs are the direct and proximate cause of Plaintiff's damages as alleged herein.

## COUNT IV: 42 U.S.C. § 1983: JAMES' SUPPRESSION OF EXCULPATORY EVIDENCE

39. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

40. James, acting under color of state law as a deputy sheriff for the County with shared primary authority of the investigation resulting in Plaintiff's prosecution, had an obligation to recognize as exculpatory and to immediately turn over to Plaintiff, through the office of the prosecutor, the compact disc recording of the informant's statements taken on April 9, 2010.

41. James' suppression of the exculpatory evidence represented by the informant's statements taken on April 9, 2010 resulted in prejudice to the Plaintiff in that he underwent a prosecution on a charge that never would have been brought had James fulfilled his obligation to turn over the evidence to the office of the prosecutor.

42. James' conduct in this regard was the direct and proximate cause of the damages alleged by Plaintiff herein.

## COUNT V: 42 U.S.C. § 1983: KOCH'S SUPPRESSION OF EXCULPATORY EVIDENCE

43. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

44. Koch, acting under color of state law as a deputy sheriff for the County with shared primary authority of the investigation resulting in Plaintiff's prosecution, had an obligation to recognize as exculpatory and to immediately turn over to Plaintiff, through the office of the prosecutor, the compact disc recording of the informant's statements taken on April 9, 2010.

45. Koch's suppression of the exculpatory evidence represented by the informant's statements taken on April 9, 2010 resulted in prejudice to the Plaintiff in that he underwent a prosecution on a charge that never would have been brought had Koch fulfilled his obligation to turn over the evidence to the office of the prosecutor.

46. Koch's conduct in this regard was the direct and proximate cause of the damages alleged by Plaintiff herein.

## **RELIEF REQUESTED**

**WHEREFORE,** Plaintiff requests the following relief:

A. On Count I, as to Defendant Wood County, Ohio:

1. Compensatory damages in the amount of $250,000.00;

2. Punitive damages in the amount of $250,000.00;

3. Attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest; and

4. Such other and further relief which the Court may deem appropriate.

B. On Counts II and III, jointly and severally as to Defendants Wood County, Ohio and Sheriff Mark Wasylyshyn:

1. Compensatory damages in the amount of $250,000.00;

2. Punitive damages in the amount of $250,000.00;

3. Attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest; and

4. Such other and further relief which the Court may deem appropriate.

C. On Count IV, as to Defendant Detective Sgt. Terry E. James:

1. Compensatory damages in the amount of $250,000.00;

      2. Punitive damages in the amount of $250,000.00;

      3. Attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest; and

      4. Such other and further relief which the Court may deem appropriate.

   D. On Count V, as to Defendant Detective Sgt. Scott Koch:

      1. Compensatory damages in the amount of $250,000.00;

      2. Punitive damages in the amount of $250,000.00;

      3. Attorney's fees, costs, expenses, prejudgment interest, and post-judgment interest; and

      4. Such other and further relief which the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a jury trial in this cause as to all counts.

                              Respectfully submitted,

                              */s/ Jeffrey P. Nunnari*
                              Jeffrey P. Nunnari (0059691)
                              3349 Executive Parkway
                              Suite D
                              Toledo, Ohio 43606
                              Telephone: (419) 578-9246
                              Facsimile: (419) 531-5675
                              E-mail: jp59691@yahoo.com
                              www.jeffreynunnarilaw.com
                              Counsel for Plaintiff