IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**THEODORE J. DIVER**,                                    Case No. 3:12 CV 957

      Plaintiff,                                    Judge Jeffrey J. Helmick

      v.                                    REPORT AND RECOMMENDATION

**PAUL A. DOBSON, et al.**,

      Defendants.                                    Magistrate Judge James R. Knepp II

## INTRODUCTION

This case arises from the events surrounding Plaintiff Theodore J. Diver's indictment and prosecution in the Wood County Court of Common Pleas. Suing under 42 U.S.C. § 1983, Plaintiff's Amended Complaint alleges Defendant Sheriff's Deputies Terry James and Scott Koch withheld exculpatory evidence in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (Doc. 16, at ¶¶ 39–46). Additionally, Plaintiff alleges individual capacity claims against Defendants James and Koch for federal malicious prosecution, Ohio common law malicious prosecution, and gross negligence under Ohio law (Doc. 16, at ¶¶ 47–57); an individual capacity claim against Sheriff Wasylyshyn for failure to train and supervise (Doc. 16, at ¶¶ 30–33); and official capacity and entity claims against Wood County Prosecutor Paul A. Dobson, Defendant Wasylyshyn, and Wood County for failure to train and supervise (Doc. 16, at ¶¶ 25–29, 34–38).

Defendants filed a Motion to Dismiss and supporting memorandum on all counts. (Docs. 19–20). Plaintiff filed a Response (Doc. 21), and Defendants filed a Reply (Doc. 22). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. This case was referred to the undersigned for the filing of a Report and Recommendation pursuant to Local Rule 72.2. (Non-document entry dated April 30, 2012). For the reasons explained below, the undersigned recommends granting

Defendants' Motion to Dismiss on all counts.

BACKGROUND

On March 31, 2010, Wood and Lucas County sheriff's deputies executed a search warrant on Plaintiff's residence in Whitehouse, Lucas County, Ohio. (Doc. 16, at ¶ 12). The deputies removed a number of items from the residence, including over 50 firearms, which the Wood County Sheriff held as evidence for Plaintiff's impending prosecution. (Doc. 16, at ¶ 12). On April 22, 2010, a Wood County Grand Jury indicted Plaintiff for one count of engaging in a pattern of corrupt activity, a first-degree felony punishable by up to ten years in prison and a $20,000 fine. (Doc. 16, at ¶ 13); *see* Ohio Revised Code § 2923.32(A)(1). When Plaintiff was arraigned on June 7, 2010, he entered a recognizance bond that stipulated he appear timely at all scheduled court events, obey all court orders and directives, maintain his current addresses and phone numbers, have no contact with various co-defendants, and restrict his travel to the State of Ohio. (Doc. 16, at ¶ 14).

Defendant Dobson assigned Assistant Prosecuting Attorney Heather M. Baker to prosecute Plaintiff's case. (Doc. 16, at ¶ 15). At various times, Baker supplied discovery to Plaintiff's counsel, including "a compact disc of an interview with the state's main witness . . . similarly charged as Plaintiff, . . . who implicated Plaintiff and others similarly charged in a burglary and theft ring". (Doc. 16, at ¶ 16). The informant alleged that on more than one occasion, Plaintiff received firearms and other property he knew or had reasonable cause to believe were stolen by one or more of the alleged co-defendants as part of an ongoing criminal enterprise. (Doc. 16, at ¶ 16). The interview on the disc was conducted during an August 26, 2010 proffer session, and as a result of the information provided, the informant received a recognizance bond after being in jail for approximately four and a half months. (Doc. 16, at ¶ 16).

2

Wood County continued to prosecute Plaintiff. (Doc. 16, at ¶ 17). On May 9, 2011, two days before Plaintiff's trial was scheduled to start, a final pretrial conference was held in Wood County Common Pleas Court Judge Reeve Kelsey's chambers. (Doc. 16, at ¶ 17; *see* Doc. 16, at ¶ 17 n.1). At this pretrial, Baker presented Plaintiff's counsel a second compact disc recording of an interview with the informant, indicating she had "just received" the disc from Defendant James and had not listened to it yet, but understood it "was only about ten minutes" in duration. (Doc. 16, at ¶ 17). Plaintiff's counsel listened to the newly-produced statement later that night. (Doc. 16, at ¶ 17). The recording was approximately 90 minutes long and was actually the first recorded statement taken from the informant by Defendant James when the informant was arrested on April 9, 2010. (Doc. 16, at ¶ 18). The statements in the April 9, 2010 recording were "markedly different in substance from [the] statements given during the proffer on August 26, 2010 and cast serious doubt on Plaintiff's 'guilt.'" (Doc. 16, at ¶ 18). Plaintiff's counsel contacted Baker and Judge Kelsey that night and obtained a continuance of the trial, suggesting to Baker "she may wish to consider dismissing the case against Plaintiff once she listened to the recording." (Doc. 16, at ¶ 18).

On June 23, 2011, Baker filed a motion to dismiss the prosecution against Plaintiff, stating the evidence provided to the State and defense counsel just prior to the trial "substantially call[ed] into question the credibility of the State's key witness" and the request to dismiss the prosecution was "made in the interest of justice." (Doc. 16, at ¶ 19). Judge Kelsey dismissed the case against Plaintiff on July 5, 2011. (Doc. 16, at ¶ 20).

Later that month, Plaintiff's counsel asked Defendant Wasylyshyn for a copy of his "office's policies/procedures controlling the collection, maintenance, handling, and disclosure of exculpatory evidence." (Doc. 16, at ¶ 21). Plaintiff's counsel received a response indicating the "office operates

3

under the policy that [he was] provided", further stating the office does not have specific policies dealing with exculpatory or inculpatory evidence in a different manner. (Doc. 16, at ¶ 21).

When Plaintiff retrieved the property seized and held, he alleges many of his collector's item firearms had been substantially damaged in Defendant Wasylyshyn's custody, diminishing their functionality and value. (Doc. 16, at ¶ 22). Additionally, Plaintiff allegedly suffered the following damages: violations of his First, Fourth, and Fourteenth Amendment rights; $25,000 in attorney fees defending the prosecution against him; lost wages; lost work resulting from customers' loss of trust in him; and monetary expenditures for food he would not have had to expend had he been able to hunt for food with his firearms. (Doc. 16, at ¶ 23–24).

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). This standard for Rule 12(b)(6) applies to "all civil actions." *Id.* at n.4 (internal quotation omitted).

## ANALYSIS

Plaintiff alleges various violations of his First, Fourth, and Fourteenth Amendment rights, federal and state law malicious prosecution, and gross negligence. However, as Defendants note in their Reply, Plaintiff's Response directly or implicitly concedes he cannot succeed on a number of these claims (Docs. 21, 22), including his First and Fourteenth Amendment claims and his individual capacity claim against Defendant Wasylyshyn. (*See* Doc. 21, at 2, 12, 12 n.10, 16–17).[1] The undersigned briefly addresses these issues before turning to the remaining Fourth Amendment, state malicious prosecution, state tort, and failure to train or supervise claims.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held a state violates a defendant's Fourteenth Amendment right to due process when it withholds evidence favorable to the defense and material to the defendant's guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *See also Smith v. Cain*, 132 S. Ct. 627, 630 (2012). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the

---

1. The undersigned does not agree with Defendants that Plaintiff implicitly waived his originally-titled "Gross Negligence" claim against Defendants James and Koch. To the contrary, though he concedes the count may have been improperly titled, Plaintiff continues to maintain evidence supports the conclusion that Defendants James's and Koch's conduct was "malicious, wanton, and/or reckless", thus placing it outside the immunity provided to political subdivision employees by Revised Code § 2744.03(A)(6). (Doc. 21, at 16–17).

defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Further, "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotations omitted). "In other words, favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Cone v. Bell*, 556 U.S. 449, 470 (2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). The "overriding concern" of *Brady* and its progeny is "the justice of the finding of guilt." *United States v. Agurs*, 427 U.S. 97, 112 (1976).

Where a criminal defendant has been acquitted, the acquittal invalidates a due process claim, regardless of whether the evidence withheld was exculpatory. *Offineer v. Kelly*, 454 F. App'x 407, 419 (6th Cir. 2011) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("[S]trictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *Lindsay v. Bogle*, 92 F. App'x 165, 170 (6th Cir. 2004); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988)). Likewise, "[i]f there is no *Brady* claim where a defendant is tried and then acquitted, there can be no *Brady* violation where a defendant's indictment is dismissed prior to a trial." *Taylor v. Montoya*, 2012 WL 2120716, *4 (N.D. Ohio 2012). Such is the case here. The case against Plaintiff was dismissed on July 5, 2011, prior to any trial or verdict. (Doc. 16, at ¶ 19–20). Thus, Plaintiff cannot sustain a Fourteenth Amendment due process claim alleging a *Brady* violation, and the Court should grant Defendants' Motion to Dismiss on this claim.

In his Amended Complaint, Plaintiff alleges damages stemming from violations of his First Amendment rights to travel and associate freely. (Doc. 16, at ¶ 23–24). However, in his Response, he concedes his First Amendment claim is "part-and-parcel of, and is for all practical purposes,

6

subsumed by his fourth amendment claims." (Doc. 21, at 12 n.10). Thus, the Court should also grant Defendants' Motion to Dismiss on any First Amendment claim to the extent Plaintiff alleges one, because Plaintiff concedes he does not have a separate claim under the First Amendment. Further, the Court should grant Defendants' Motion to Dismiss on Plaintiff's individual capacity claim against the Defendant Sheriff because Plaintiff "concedes that in this post-*Iqbal* world, Count II, insofar as it seeks to impose individual liability on Defendant Wasylyshyn under a failure to train/supervise theory, fails as a matter of law." (Doc. 21, at 17). Having addressed these preliminary issues, the undersigned turns to Plaintiff's remaining claims.

Fourth Amendment

Plaintiff alleges Defendants James and Koch violated his Fourth Amendment rights by suppressing exculpatory evidence. (Doc. 16, at ¶¶ 39–52; Doc. 21, at 5–11, 12–16). He claims Defendants James and Koch "had an obligation to recognize as exculpatory" and "immediately turn over to Plaintiff" the recording from April 9, 2010. (Doc. 16, at ¶¶ 40, 44). Plaintiff further contends Defendants' suppression of the exculpatory evidence caused "prejudice to the Plaintiff in that he underwent a prosecution on a charge that never would have been brought had James [and Koch] fulfilled [their] obligation to turn over the evidence to the office of the prosecutor." (Doc. 16, at ¶¶ 41, 45). Additionally, Plaintiff argues Defendants James and Koch participated in the decision to prosecute him and did not supply all evidence relevant to the decision to prosecute to the prosecutor, further alleging that had they supplied all the relevant evidence, no prosecution would have been initiated. (Doc. 16, at ¶¶ 48–50). Thus, Plaintiff claims his prosecution was not based on probable cause "because if James and Koch had supplied all evidence . . . no probable cause determination would have ensued", and he suffered a deprivation of his liberty as a result. (Doc. 16, at ¶¶ 51–52).

7

Defendants argue they are entitled to qualified immunity on Plaintiff's Fourth Amendment claim. (Doc. 22, at 11).

"Qualified immunity shields government officials from civil liability in the performance of discretionary functions so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Fettes v. Hendershot*, 375 F. App'x 528, 531 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Plaintiff bears the burden of showing Defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Once an officer raises qualified immunity, the plaintiff must prove (1) the officer's conduct violated a constitutional right; *and* (2) the right was "clearly established to the extent that a reasonable person in the officer's position would know the conduct complained of was unlawful." *O'Malley v. Hagler*, 652 F.3d 662, 667 (6th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Plaintiffs cannot overcome qualified immunity if they fail to show either that a constitutional right was violated or that the right was clearly established. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Because Plaintiff has not stated a claim for a constitutional violation, he cannot meet his burden to overcome qualified immunity.

In *Albright v. Oliver*, 510 U.S. 266, 267–77 (1994), a plurality of the Supreme Court held pretrial deprivations of liberty should only be considered under the Fourth Amendment. The Sixth Circuit recognizes a claim for malicious prosecution under the Fourth Amendment, and "[s]uch a claim encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003)). To succeed on such a claim, a plaintiff must show (1) a criminal prosecution

8

was initiated against him; (2) the defendant made, influenced, or participated in the decision to prosecute; (3) there was a lack of probable cause for the criminal prosecution; and (4) the plaintiff suffered a deprivation of liberty because of the prosecution. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). If one of these elements cannot be met by any plausible set of facts Plaintiff can prove, he has failed to state a claim for which relief can be granted. To decide Plaintiff's claim, the Court need not proceed further than the probable cause analysis. *See Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001). Even if all other elements were met – indeed, even assuming the Amended Complaint satisfactorily alleges Defendants James and Koch influenced the decision to prosecute – Plaintiff cannot show probable cause was lacking, and this is fatal to his claim.

"[I]t has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding an accused to answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). The Sixth Circuit has repeatedly stated that where a plaintiff was indicted pursuant to a grand jury determination and he does not allege the grand jury was biased or illegally constituted, he has no basis for his constitutional claim. *United States v. Ruyle*, 524 F.2d 1133, 1135–36 (6th Cir. 1975); *United States v. Adamo*, 742 F.2d 927, 936 (6th Cir. 1984); *Higgason*, 288 F.3d at 877; *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) (distinguishing situations in which a grand jury indictment subsequent to arrest attempts to establish probable cause for the earlier arrest). In fact, where there was a grand jury indictment, fair upon its face, by a properly constituted grand jury, no claim of malicious prosecution can survive even if governmental officers made false statements. *Stanley v. City of Norton*, 124 F. App'x 305, 310 (6th Cir. 2005) (internal citations omitted). The Sixth Circuit has

9

even reversed a magistrate judge and district court judge and held *Higgason*'s "indictment conclusively determines the existence of probable cause" rule controlled the outcome even when there was known animosity between the plaintiff and defendants, the investigation was seriously flawed, and the grand jury presentation did not include known exculpatory evidence. *Bakos v. City of Olmstead Falls*, 73 F. App'x 152, 153–54, 156–57 (6th Cir. 2003).

Here, the grand jury indicted Plaintiff, resulting in his arrest. (Doc. 16, at ¶¶ 13–14). Plaintiff has not alleged any bias in the grand jury, or alleged the grand jury was improperly constituted or otherwise irregular. Thus, he failed to allege the indictment was not fair on its face and therefore under Sixth Circuit case law, that indictment conclusively determined there was probable cause to arrest Plaintiff and hold him to answer the charge. And because he can prove no set of facts establishing probable cause was lacking, he cannot satisfy the third element of a malicious prosecution claim under the Fourth Amendment.

Plaintiff cited *Cook v. McPherson*, 273 F. App'x 421, 424 (6th Cir. 2008) for the proposition that an exception exists where the indictment was obtained by defendant police officers who knowingly presented false testimony to the grand jury. But here, Plaintiff has not even alleged Defendants James and Koch testified before the grand jury, much less that they presented false or misleading testimony. Instead, Plaintiff claims that had the exculpatory evidence been presented to the prosecutor prior to the grand jury session and then presented to the grand jury, the grand jury would not have found probable cause to indict him. These allegations do not help Plaintiff's case. Prosecutors have no obligation to present exculpatory evidence to the grand jury. *Adamo*, 742 F.2d at 937 (citing *Ruyle*, 524 F.2d at 1133). Therefore, it would merely be speculation to conclude that *if* Defendants James and Koch had given the April 9, 2010 recording to the prosecutor who

10

presented the case to the grand jury, that prosecutor *would* have chosen to present the exculpatory evidence to the grand jury despite being under no obligation to do so, *and* the grand jury would then have found no probable cause.

Because the indictment conclusively determined the existence of probable cause, Plaintiff has failed to state a claim for malicious prosecution under the Fourth Amendment. Because he cannot show a constitutional violation, he cannot overcome the presumption that Defendants James and Koch are entitled to qualified immunity, and Defendants' Motion to Dismiss should be granted on this claim.

Ohio Malicious Prosecution

Plaintiff also alleges malicious prosecution under Ohio law, claiming Defendants James and Koch "maliciously instituted and continued Plaintiff's prosecution on less than probable cause" and prosecution was eventually terminated in Plaintiff's favor. (Doc. 16, at ¶¶ 54–55). To prove a malicious prosecution claim under Ohio law, a plaintiff must show (1) government officials instituted or continued criminal proceedings with malice; (2) they lacked probable cause; and (3) the proceedings were terminated in the accused's favor. *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) (citing *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142 (1990)). Plaintiff's claim should be dismissed for two reasons: He has not sufficiently alleged malice as required by Ohio law, and he has not alleged facts sufficient to show lack of probable cause. These issues are considered together, as lack of probable cause can create an inference of malice. *Harris*, 422 F.3d at 327–28.

Although federal malicious prosecution claims do not require a showing of malice, *Sykes*, 625 F.3d at 309, Ohio does require a showing of malice to succeed on a malicious prosecution claim. *See, e.g., Trussel*, 53 Ohio St.3d at 144. In the malicious prosecution context, "malice" is "an

11

improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice. *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 85 (1990). Plaintiff alleges no specific facts establishing Defendants James and Koch acted from any motivation other than the legitimate interest of bringing an offender to justice. He has not alleged any bad blood between himself and Defendants; neither has he alleged some kind of personal vendetta was a driving factor behind his prosecution. Instead, he merely relies on conclusory allegations that Defendants "maliciously instituted and continued" his prosecution "on less than probable cause." (Doc. 16, at ¶ 54). These are precisely the sort of conclusory, threadbare recitals of the elements of a cause of action that do not survive a motion to dismiss under *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 555 ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

It is true that under Ohio law, malice "may be inferred where the evidence demonstrates that charges were filed without probable cause." *Guy v. McCartney*, 2002-Ohio-3035, ¶ 20 (Ohio Ct. App. 2002) (quoting *Garza v. Clarion Hotel, Inc.*, 119 Ohio App.3d 478, 482 (Ohio Ct. App. 1997)). However, in *Garza*, the case Plaintiff relies on, a grand jury did not issue an indictment, *see Garza*, 119 Ohio App.3d at 478–84, and under Ohio law a grand jury indictment is prima facie evidence of probable cause. *Guy*, 2002-Ohio-3035 at ¶ 23; *Carlton v. Davisson*, 104 Ohio App.3d 636, 650–51 (Ohio Ct. App. 1995); *Deoma v. Shaker Heights*, 68 Ohio App.3d 72, at 77 (Ohio Ct. App. 1990). "[W]hen an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause." *Deoma*, 68 Ohio App.3d at 77. To satisfy this burden, the Plaintiff "must produce evidence to the effect that the return of the indictment

12

resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." *Id. See also Guy*, 2002-Ohio-3035 at ¶ 23; *Carlton*, 104 Ohio App.3d at 651. As discussed in the Fourth Amendment malicious prosecution section, Plaintiff has not alleged anything of the sort. Therefore, he has not alleged facts rebutting the presumption of probable cause created by the grand jury's indictment in his case, and he cannot create an inference of malice based on lack of probable cause. The Court should grant Defendants' Motion to Dismiss Plaintiff's Ohio law malicious prosecution claim.

Failure to Train and Supervise

Plaintiff alleges a number of claims for failure to train and supervise. These include official capacity claims against Defendants Dobson and Wasylyshyn, as well as claims against the Defendant County. (Doc. 16, at ¶¶ 25–38). Specifically, he argues it was the policy, practice, or custom of the Defendant County and Defendant Dobson to inadequately train and supervise the secretaries, interns, and law clerks preparing and providing discovery packets to defense counsel (Doc. 16, at ¶ 36), and the policy, practice, or custom of the Defendant County and Defendant Wasylyshyn to inadequately train and supervise deputy sheriffs in the performance of their duties, particularly with regard to handling exculpatory evidence (Doc. 16, at ¶ 37). These alleged policies, practices, or customs, he contends, demonstrated a deliberate indifference to constitutional rights. (Doc. 16, at ¶ 38).

Plaintiff's official capacity claims, "in all respects other than name", are equivalent to claims against the Defendant County. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." (internal citations omitted)). To the extent Plaintiff alleged individual

13

official capacity claims against Defendants Dobson and Wasylyshyn, the Court should grant Defendants' Motion to Dismiss with respect to those claims and consider those allegations as part and parcel of the claim against the Defendant County.

Absent an underlying constitutional violation by one of its officers, a county cannot be liable under § 1983. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004); *see also Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." (emphasis in original)). Because, as detailed above, the Court should find no underlying constitutional violation occurred, the analysis could stop here. However, Plaintiff has failed to state a claim for failure to train or supervise for another reason: He has not alleged sufficient facts to show the Defendant County's policies or customs rose to the level of deliberate indifference to civil rights.

A government entity can only be liable under § 1983 if the plaintiff demonstrates his civil rights have been violated as a direct result of that municipality's policy or custom. *Blackmore*, 390 F.3d at 890 (citing *Monell v. Dept. of Soc. Servs. City of New York*, 436 U.S. 658, 694 (1978)). That is, "official policy must be the moving force of the constitutional violation". *Id.* (internal citations omitted). The inadequacy of police training provides a basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Barnes v. City of Toledo*, 2010 WL 1268044, *7 (N.D. Ohio 2010). Therefore, to succeed on a claim for failure to train, the plaintiff must show (1) the training program is inadequate to the tasks officers must perform; (2) the inadequacy resulted from the government entity's deliberate indifference; and (3) that deliberate indifference is closely related to or actually caused

14

the plaintiff's injury. *Id.* (internal citations omitted).

Plaintiff's Amended Complaint has not alleged facts sufficient to state such a claim. Plaintiff alleges the Sheriff's office lacks specific policies to ensure subordinates can recognize and properly handle exculpatory evidence; specifically, he alleges the Sheriff's office admits it does not have specific policies dealing with exculpatory and inculpatory evidence in a different manner. (Doc. 16, at ¶ 21). However, Plaintiff's Fourth Amendment malicious prosecution claim against Defendants James and Koch does not allege they could not identify exculpatory evidence due to insufficient training. Instead, Plaintiff's position is that they knew it was exculpatory – indeed, that any reasonable officer would have known it was exculpatory – but that Defendants James and Koch withheld it from the prosecutor and Plaintiff's counsel until the eve of trial nonetheless. (Doc. 21, at 8). Because Plaintiff's alleged injury – being charged with a crime absent probable cause – is premised on Defendants James and Koch *knowing* the April 9, 2010 recording was exculpatory and failing to provide it to the prosecution so he would be prosecuted, he has not contended any alleged indifference or training insufficiencies caused his alleged injury. Thus, he has not alleged facts sufficient to state a claim for failure to train or supervise. *See Barnes*, 2010 WL 1268044 at *7. The Court should grant Defendants' Motion to Dismiss as to Plaintiff's *Monell* claim against the Defendant County.

Ohio Tort Claim

In his Amended Complaint, Plaintiff claims Defendants James and Koch acted in a way that was "willful, malicious, fraudulent, and reckless", alleging this constituted gross negligence. (Doc. 16, at ¶ 57). In Ohio, employees of political subdivisions are immune from liability unless their acts fall within a statutory exception. Revised Code § 2744.03(A)(6); *Cramer v. Auglaize Acres*, 113

15

Ohio St.3d 266, 270 (2007). Revised Code § 2744.03(A)(6)(b) provides an exception to immunity if the employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." As Defendants correctly note, gross negligence does not trigger this particular exception to immunity. *Kaylor v. Rankin*, 356 F. Supp. 2d 839, 856 (N.D. Ohio 2005) (citing *Chalker v. Howland Twp. Trustees*, 658 N.E.2d 335 (Ohio Ct. Com. Pl. 1995)).

Despite his claim being titled "gross negligence", Plaintiff nevertheless contends he pled sufficient facts to state a claim outside statutory immunity protections because he alleged Defendants James's and Koch's conduct was willful, malicious, fraudulent, and reckless. (Doc. 21, at 16–17). This is not so, for the same reasons Plaintiff insufficiently pled the malice element of his Ohio malicious prosecution claim. After *Twombly* and *Iqbal*, plaintiffs cannot rely on conclusory allegations that Defendants' conduct was "willful, malicious, fraudulent, and reckless", but must allege factual content allowing the Court to reasonably infer the Defendant is liable for the alleged conduct. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Hensley Mfg.*, 579 F.3d at 609. Thus, Plaintiff failed to state a claim against Defendants James and Koch that falls outside immunity protections, and Defendants' Motion to Dismiss should be granted.

### CONCLUSION AND RECOMMENDATION

For the above-stated reasons, Plaintiff has failed to state a claim for which relief can be granted in any of the counts in his Amended Complaint. The undersigned therefore recommends granting Defendants' Motion to Dismiss in its entirety.

       s/James R. Knepp, II       

United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

17