UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

THEODORE J. DIVER,                                                    Case No.  3:12 cv 957

                    Plaintiff

        v.                                                    MEMORANDUM OPINION
                                                                      AND ORDER

PAUL A. DOBSON, ET AL.,

                    Defendants

        This matter is before me on the objections of Plaintiff Theodore J. Diver, to the Report and

Recommendation ("R & R") of Magistrate Judge James R. Knepp, II regarding Defendants' motion

to dismiss. (Doc. No. 23). For the reasons stated below, I adopt the Magistrate's recommendations

as set forth in the R & R and grant Defendants' motion to dismiss.  (Doc. No. 19).

## BACKGROUND

        The background as set forth by Magistrate Judge Knepp in his January 15, 2013 R & R, not

subject to any objections, is accurate and incorporated as follows:

        On March 31, 2010, Wood and Lucas County sheriff's deputies executed a search
        warrant on Plaintiff's residence in Whitehouse, Lucas County, Ohio.  (Doc. 16, at ¶ 12).  The
        deputies removed a number of items from the residence, including over 50 firearms, which
        the Wood County Sheriff held as evidence for Plaintiff's impending prosecution.  (Doc. 16
        at ¶ 12).  On April 22, 2010, a Wood County Grand Jury indicted Plaintiff for one count of
        engaging in a pattern of corrupt activity, a first-degree felony punishable by up to ten years
        in prison and a $20,000 fine.  (Doc. 16, at ¶ 13); see Ohio Revised Code § 2923.32(A)(1).
        When Plaintiff was arraigned on June 7, 2010, he entered a recognizance bond that
        stipulated he appear timely at all scheduled court events, obey all court orders and directives,

maintain his current addresses and phone numbers, have no contact with the various co-defendants, and restrict his travel to the State of Ohio.  (Doc. 16, at ¶ 14).

Defendant Dobson assigned Assistant Prosecuting Attorney Heather M. Baker to prosecute Plaintiff's case.  (Doc. 16, at ¶ 15).  At various times, Baker supplied discovery to Plaintiff's counsel, including "a compact disc of an interview with the state's main witness . . . similarly charged as Plaintiff . . . who implicated Plaintiff and others similarly charged in a burglary and theft ring".  (Doc. 16, at ¶ 16).  The informant alleged that on more than one occasion, Plaintiff received firearms and other property he knew or had reasonable cause to believe were stolen by one or more of the alleged co-defendants as part of an ongoing criminal enterprise.  (Doc. 16, at ¶ 16).  The interview on the disc was conducted during an August 26, 2010 proffer session, and as a result of the information provided, the informant received a recognizance bond after being in jail for approximately four and a half months. (Doc. 16, at ¶ 16).

Wood County continued to prosecute Plaintiff.  (Doc. 16, at ¶ 17).  On May 9, 2011, two days before Plaintiff's trial was scheduled to start, a final pretrial conference was held in Wood County Common Pleas Court Judge Reeve Kelsey's chambers.  (Doc. 16, at ¶ 17; *see* Doc. 16, at ¶ 17 n.1).  At this pretrial, Baker presented Plaintiff's counsel a second compact disc recording of an interview with the informant, indicating she had "just received" the disc from Defendant James and had not listened to it yet, but understood it "was only about ten minutes" in duration. (Doc. 16, at ¶ 17).  Plaintiff's counsel listened to the newly-produced statement later that night. (Doc. 16, at ¶ 17).  The recording was approximately 90 minutes long and was actually the first recorded statement taken from the informant by Defendant James when the informant was arrested on April 9, 2010. (Doc. 16, at ¶ 18).  The statements in the April 9, 2010 recording were "markedly different in substance from [the]statements given during the proffer on August 26, 2010 and cast serious doubt on Plaintiff's 'guilt.'" (Doc. 16, at ¶ 18).  Plaintiff's counsel contacted Baker and Judge Kelsey that night and obtained a continuance of the trial, suggesting to Baker "she may wish to reconsider dismissing the case against Plaintiff once she listened to the recording."  (Doc. 16, at ¶ 18).

On June 23, 2011, Baker filed a motion to dismiss the prosecution against Plaintiff, stating the evidence provided to the State and defense counsel just prior to the trial "substantially call[ed] into question the credibility of the State's key witness" and the request to dismiss the prosecution was "made in the interest of justice."  (Doc. 16, at ¶ 19).  Judge Kelsey dismissed the case against Plaintiff on July 5, 2011.  (Doc. 16, at ¶ 20).

Later that month, Plaintiff's counsel asked Defendant Wasylyshyn for a copy of his "office's policies/procedures controlling the collection, maintenance, handling, and disclosure of exculpatory evidence."  (Doc. 16, at ¶ 21).  Plaintiff's counsel received a response indicating the "office operates under the policy that [he was] provided", further stating the office does not have specific policies dealing with exculpatory or inculpatory evidence in a different manner.  (Doc. 16, at ¶ 21).

When Plaintiff retrieved the property seized and held, he alleges many of his collector's item firearms had been substantially damaged in Defendant Wasylyshyn's custody, diminishing their functionality and value.  (Doc. 16, at ¶ 22).  Additionally, Plaintiff allegedly suffered the following damages:  violations of his First, Fourth, and Fourteenth Amendment rights; $25,000 in attorney fees defending the prosecution against him; lost wages; lost work resulting from customers' loss of trust in him; and monetary expenditures for food he would

not have had to expend had he been able to hunt for food with his firearms.  (Doc. 16, at ¶ 23-24).

(Doc. No. 23, at pp 2-4).

## ISSUES

Magistrate Knepp initially determined Plaintiff's Fourteenth Amendment due process claim was without merit because dismissal of his indictment prior to trial was fatal to his claim of a *Brady*[1] violation.  Based upon Plaintiff's concessions in his response brief, Magistrate Knepp recommended dismissing the claims alleging a First Amendment violation as well as the individual capacity claim against Defendant Wasylyshyn on a failure to train or supervise theory.  Additionally, Magistrate Knepp found Plaintiff's Ohio malicious prosecution claim unsustainable and also recommended dismissal of this claim.  As these recommendations are without objection, I will adopt them without further discussion and now turn to the remaining claims to which Plaintiff objects.

## STANDARD OF REVIEW

A district court may conduct a de novo review of "any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  *See also* Local Rule 72.3(b).   A general objection to a magistrate's report and recommendation which fails to specify the issues of contention does not satisfy the requirement.  The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  So long as a party was properly informed of the consequences of failing to object, a general objection constitutes waiver of the subsequent review by the district court.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

DISCUSSION

**Malicious Prosecution under the Fourth Amendment**

In addressing this claim, Magistrate Knepp found one of the elements necessary to a finding of malicious prosecution was insufficient as a matter of law and required dismissal.  Specifically, the Magistrate determined Plaintiff was unable to survive a Rule 12(b)(6) challenge because the indictment which resulted in his arrest was not alleged to have been tainted by any impropriety in the grand jury process, nor could Plaintiff establish probable cause was lacking as a matter of law. (Doc. No. 23 at pp. 9-11).

Plaintiff strenuously objects to this finding based upon authority contained in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), and the reliance by the Magistrate on pre-*Sykes* cases in support of the R & R.  Magistrate Knepp correctly cited *Sykes* as establishing the elements necessary to sustain a malicious prosecution claim under the Fourth Amendment.    For purposes of this discussion, however, I address two of the four[2] factors required for malicious prosecution which were subject to Plaintiff's objections.

First, the lack of probable cause.   "It reasonably cannot be doubted that, in the court to which the indictment is returned, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."  *Ex parte U.S.,* 287 U.S. 241, 250 (1932).  This holds true when the arrest is pursuant to an indictment by the grand jury.  *United States v. Adamo,* 742 F.2d 927, 936 (6th Cir. 1984), *cert denied sub nom. Freeman v. United States*, 469 U.S. 1193 (1985); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 207 n.13 (6th Cir. 2005).

---

[2]  *Sykes* set forth the following factors to be established to succeed on a malicious prosecution claim brought under the Fourth Amendment:  (1) initiation of a criminal prosecution against the plaintiff where the defendant made, influenced, or participated in the decision to prosecute; (2) a lack of probable cause for the criminal prosecution; (3) as a result of the legal proceeding the plaintiff suffered a deprivation of liberty; and (4) the criminal proceeding was concluded in the plaintiff's favor.  625 F.3d at 308-309.

4

Plaintiff takes issue with the failure to present exculpatory evidence to the grand jury.  No such duty exists.  *Adamo*, 742 F.2d at 937.  *See also Bakos v. City of Olmsted Falls*, 73 Fed. Appx. 153, 157 (6th Cir. 2003), *citing Friedman v. United States*, 927 F.2d 259, 262 (6th Cir. 1991).   The grand jury process was explained by the Sixth Circuit as follows:

> The principal duties of grand jurors are to determine whether probable cause exists to believe that a crime has been committed and to protect the accused from unfounded criminal prosecutions.  *United States v. Calandra*, 414 U.S. 383, 343, 94 S. Ct. 613, 617, 38 L.Ed.2d 561 (1974).  In discharging their office, grand jurors traditionally have been "accorded wide latitude to inquire into violations of criminal law," and their investigation is "unrestrained by the technical procedural and evidentiary rules governing their conduct of criminal trials."  *Id.* A grand jury proceeding is not an adversary hearing to determine the guilty or innocence of the particular individual accused, but an *ex parte* investigation that decides whether the prosecution shall commence. *Id.* at 343-44, 94 S.Ct. at 617-18.

> "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered.  Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello v. United States*, [350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)]; *Holt v. United States*, 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021] (1910). . . . ."  *Calandra*, 414 U.S. 15 344-45, 94 S.Ct. at 618.

*United States v. Powell*, 823 F.2d 996, 999-1000 (6th Cir.), *cert. denied* 484 U.S. 969 (1987).

Here, the amended complaint does not allege irregularities or improprieties regarding the constitution of the grand jury or the process sufficient to meet the requirements of a Rule 12(b)(6) challenge.   Even if the Defendants had supplied all of the information in their possession regarding the investigation, the prosecutor was under no duty to present it to the grand jury.

Plaintiff's objection also challenges the involvement, participation, and influence by Defendants in the decision to prosecute.  While the amended complaint accurately recites the requirement for this factor[3], there is little else alleged.   To survive a motion to dismiss under Rule

---

[3] **COUNT VI:  42 U.S.C. § 1983 MALICIOUS PROSECUTION**
    47. Paragraphs 1 through 24 and 29 through 46 are incorporated by reference as though fully set forth
    48. Defendants James and Koch participated in the decision to prosecute Plaintiff.
    49.  Defendants James and Koch did not supply all evidence relevant to the decision to prosecute Plaintiff to the office of the prosecutor for evaluation in its decision to prosecute Plaintiff.

12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555  (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action").  A complaint must state sufficient facts, when accepted as true, to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

The Sixth Circuit in *Sykes* cited to examples of participation and influence in the decision to prosecute as follows:

> For example, in *Reed v. City of Chicago*, the Seventh Circuit noted that although "[i]t is conceivable that a wrongful arrest could be the first step towards a malicious prosecution [,] ... the chain of causation" will be "broken by an indictment[ ] absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir.1996) (citing *316 *Senra v. Cunningham*, 9 F.3d 168, 174 (1st Cir.1993), which held that a "[t]he chain of causation [will be] broken if the filing of the information by the attorney at the state Attorney General's office was free of pressure or influence exerted by the police officers or knowing misstatements made by the officers to the Attorney General's office"); *Taylor v. Meacham*, 82 F.3d 1556, 1563-64 (10th Cir.1996) (adopting *Reed's* reasoning and holding that no claim could be sustained against a sheriff who may have "set in motion a malicious prosecution" because the "preliminary hearing broke the 'chain of causation'" and there was no evidence that the sheriff "made false or misleading statements following [the plaintiff's] arrest, nor that he somehow caused false or perjured testimony to be

---

50. Had Defendants James and Koch supplied all evidence relevant to their investigation to the office of the prosecutor, the prosecution against Plaintiff would not have been initiated.

51.  Plaintiff's prosecution was based on less than probable cause, because if James and Koch supplied all evidence at their disposal relative to Plaintiff's investigation, no probable cause determination would have ensued.

52.  Plaintiff suffered, *inter alia*, a deprivation of his liberty as a result of the actions of James and Koch.

(Doc. No. 16 at p. 15).

presented at the preliminary hearing"). Likewise, in *Higazy v. Templeton,* the Second Circuit concluded that "[d]efendants ... may be liable for consequences caused by reasonably foreseeable intervening forces," and "the chain of causation need not be considered broken [in a malicious-prosecution claim against an officer] if [the officer] deceived the subsequent decision maker or could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty." *Higazy v. Templeton,* 505 F.3d 161, 177 (2d Cir.2007) (internal quotation marks, citation, and alteration omitted).

625 F.3d at 315-16.

In the present action, the amended complaint offers nothing more than sheer speculation. Nor is there anything upon which the Court can infer the Defendants' actions were instrumental in Plaintiff's prosecution.  Plaintiff's reliance upon *Ahlers v. Schebil*, 966 F. Supp. 518 (E.D. Mich. 1997), lends no support to his position. As noted by Defendants, *Ahlers* involved an arrest without any grand jury proceedings.  Initially, the district court dismissed defendants' motion for summary judgment as premature because discovery had not yet been completed.  *Id.* at 537-38.  When defendants renewed their motion for summary judgment, the district court granted judgment on the constitutional claims finding the failure to turn over exculpatory evidence was not objectively unreasonable, there was no evidence of bad faith, there was sufficient probable cause to justify the warrant for arrest, and the decision to charge was ratified by presentation of evidence to a neutral magistrate who ultimately issued the warrant.  994 F. Supp. 856, 877-78 (E.D. Mich. 1998).  The Sixth Circuit affirmed the decision in its entirety.  *Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999).

In sum, Plaintiff has failed to present allegations meeting *Twombly's* plausibility standard on Defendants' conduct regarding influence or participation in the decision to prosecute.  Assuming *arguendo* the allegations satisfied this factor, the amended complaint offers nothing to rebut the presumption that the indictment was fair on its face and reflected a basis for the indictment based upon probable cause. *See Offineer v. Kelly*, 454 Fed. Appx. 407, 415-16 (6th Cir. 2011).  Therefore, Plaintiff's first objection is without merit.

**Failure to Train and Supervise**

Magistrate Knepp initially recommended dismissal of the failure to train and supervise claim against Defendants Dobson and Wasylyshyn, to the extent they are alleged as official-capacity claims as they are in reality claims against the entity.  Plaintiff does not object to this recommendation, so I will adopt it and dismiss these claims against those Defendants in their official capacity.

In assessing the claims against Defendant Wood County, Magistrate Knepp recommended dismissal for two reasons.  First, he determined no viable constitutional violation under the Fourth Amendment as a matter of law.  Second, Plaintiff failed to sufficiently allege facts to sustain a viable claim of deliberate indifference.

Plaintiff objects to both the Magistrate's factual and legal conclusions.   Specifically, Plaintiff takes issue with the Magistrate's characterization of Defendant James or Koch's understanding that the evidence they are alleged to have withheld was exculpatory.  (Doc. No. 24 at p. 11).  He also takes issue with the Magistrate finding no constitutional violation.

Regarding the constitutional violation, I have already determined there was no violation and that the Magistrate's recommendation on this matter was correct as a matter of law.

Regarding the failure to supervise and train claim, the Sixth Circuit's guidance is instructive:

> A local government is not responsible under § 1983 solely because injuries were inflicted by its employees or agents.  *Monell*, 436 U.S. at 694.  "Instead, it is when the execution of a government's policy or custom. . . inflicts the injury that the government as an entity is responsible under § 1983."  *Ibid.*  A plaintiff must therefore specify a governmental policy or custom from which his injuries flowed.  *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010).  Failure to provide employees with adequate training may also give rise to *Monell* liability when it evinces deliberate indifference for the rights of those with whom the governmental employees have contact, such that the inadequate training may be fairly said to represent the government's policy of custom.  *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

*Brown v. Cuyahoga County, Ohio*, 2013 WL 1003511 *4 (6th Cir. 2013).  Stated differently, there must be a causal connection between the failure to train and the injury.  As noted by the Supreme Court, the "official policy must be 'the moving force of the constitutional violation' in order to establish the

8

liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 327 (1981), *citing Monell*, 436 U.S. at 694.

Here the amended complaint alleges in pertinent part:

27. . . Moreover, Dobson has failed to adequately train and supervise the secretaries, interns and law clerks in their duties, especially with regard to obtaining, recognizing and identifying potentially exculpatory evidence.

. . .

32. . . In spite of this knowledge, the Sheriff, as the ultimate supervisor and final policy maker of his office, did not have in place at the time of Plaintiff's damages as alleged herein a policy or training program instructing his subordinates in the recognition and proper handling of exculpatory evidence.

. . .

37. It was the policy, practice or custom of the County and the Sheriff to inadequately train and supervise deputy sheriffs in the performance of their duties through an appropriate regimen of supervision and training designed to prevent the type of harm suffered by Plaintiff herein, in spite of the Sheriff's and the County's knowledge that failing to promulgate an appropriate policy or regimen of training and supervision of deputies posed an obvious circumstance or eventuality that the deputies investigating possible crimes would either learn or come into possession of evidence which is exculpatory in nature, and then fail to properly identify and pass along that evidence to prosecutors.

(Doc. No. 16 at pp. 11-13).

This is in stark contrast to Plaintiff's position on his Fourth Amendment claim alleging malicious prosecution as stated in Plaintiff's opposition to Defendants' motion to dismiss as follows:

Plaintiff's theory of the case is as follows:  Defendants James and Koch, as officers with primary investigative authority of the investigation resulting in Plaintiff's prosecution, came into possession of evidence at the investigation's inception which cast serious doubt on Plaintiff's alleged "guilt."  Moreover, any objectively reasonable officer would have recognized the exculpatory nature of the evidence.  Rather than turning that evidence over to the prosecutor, and acting as a grand jury of two, they withheld it and only provided that evidence which was apparently sufficiently inculpatory to support a probable cause determination.

(Doc. No. 21 at pp. 8-9).  As Plaintiff's claim on his Fourth Amendment violation is dependent upon the Defendants knowingly withholding exculpatory evidence, his allegations regarding a failure to train are insufficiently pled to sustain a claim under *Monell*.  In other words, "such allegations are

not probative of an inadequate training program or other specific deficiency which is the actual cause of the purported constitutional deprivation[].” *Barnes v. City of Toledo*, 2010 WL 1268044 *8 (N.D. Ohio 2010).

As Plaintiff's objections are not well taken, I grant Defendants' motion to dismiss on the *Monell* claims.

**Ohio Tort**

With regard to the claims against Defendants James and Koch asserting gross negligence, Magistrate Knepp determined the allegations to be insufficiently pled to meet the exception to Ohio's immunity provision.  Ohio  Rev. Code § 2744.03(A).  Under this provision, negligence and gross negligence do not fall within the exceptions to immunity.  *See Kaylor v. Rankin*, 356 F. Supp.2d 839 (N.D. Ohio 2005)(citation omitted).  The Magistrate correctly determined that Plaintiff's conclusory allegations lacked any facts to infer either malicious purpose, bad faith or acting in a wanton or reckless manner.  Conclusory allegations alone fail to meet the plausibility standard set forth by *Twombly* and *Iqbal*.

Plaintiff's objections offer nothing in the way of substance, and his reply in support of his objections refers the Court to arguments contained in his opposition to Defendants' motion to dismiss.  Setting aside Plaintiff's reliance on his previous memoranda as general objections, he has failed to present anything to persuade me from adopting Magistrate Knepp's recommendation on this claim as well.

CONCLUSION

Accordingly, having considered Plaintiff's objections and for the reasons stated above, I will adopt Magistrate Knepp's recommendations, as contained in his R & R dated January 15, 2013, as the Order of this Court.

Defendants' motion to dismiss (Doc. No. 19) is granted and this case is dismissed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge